JOHN KELLOGG v. DAN HIGGINS and EDWARD H. AIKEN.

The duties of selectmen under the 13th section of the act of November 17, 1825, relating to the duties of listers, are purely *ministerial.*

If the party, feeling himself aggrieved by the assessment of the listers, makes and subscribes a written disclosure, in which he especially states that his money on hand, and the debts due him, do not exceed the debts he owes, and this is duly sworn to before one of the selectmen of the town, it is a compliance with the requisitions of the statute, and the selectmen have no right to require him to answer particulars.

If the selectmen neglect to certify and deliver to the town clerk such disclosure so made and sworn to, and delivered into their hands for that purpose, they become liable to the party in an action on the case, for such damages as he shall sustain by reason of such neglect.

THIS was an action of the case against the defendants, who were two of the selectmen of the town of Benson, for refusing to return, to the town clerk of said Benson, the plaintiff's disclosure, under the statute, of the amount of his money on hand, debts due him, &c., by reason of which he was unjustly taxed, &c.

Plea, general issue and trial by jury.

On the trial in the county court, it was agreed by the parties that, at the annual March meeting of the town of Benson in 1836, Daniel Crofoot, Dan Higgins and Edward H. Aiken, were duly appointed and sworn as selectmen, in and for said town of Benson, for the year then next ensuing, and that, at the same meeting, Seth Wood, Hubbard N. Griswold, and Isaac Dickinson, were duly elected and sworn as listers, in and for said town of Benson, for the year then next ensuing; that said listers made out and signed officially a list of the property by them assessed, including money on hand, debts due, &c. with the names of the persons assessed in due form, and on the 18th day of June, 1836, lodged the same in the office of the town clerk of said Benson ; that the name of the plaintiff was placed in said assessment, and the sum of $5333,00 was annexed thereto for moneys of the plaintiff on hand and debts due to him, &c., that in the grand list of said Benson for 1836, completed and lodged in the office of the said town clerk December 10, 1836, the sum of $319,98, being six per cent on said $5333,00 was included in the list set to the name of the plaintiff by said listers, and included in the res-

pective balances, for state, highway, county, town and other taxes ; that the following taxes had been duly assessed to said Kellogg on said $319,98, viz. a tax of three cents on the dollar for the support of common schools ; the annual state tax, assessed under the act passed Nov. 15, 1836, of three cents on the dollar—an annual town tax, legally voted by said town of Benson at the annual March meeting of 1837, and at a legal meeting held April 4, 1837, of eight and one half cents on the dollar—the annual highway tax, assessed in 1837, of six cents on each dollar of said list—and a tax of nine and one-eighth cents on the dollar of said list, assessed to the plaintiff as a member of the first congregational society, in the summer of 1836, in said Benson ; that the whole amount of taxes assessed to said Kellogg on said $319,98, as aforesaid, is ninety four dollars seventy six cents, and the said Kellogg was compelled to pay, and did duly pay, to the several collectors of the said taxes, who held tax bills and warrants duly made out for the collection of the same of said Kellogg before the commencement of this suit, the said sum of $94,76 in the whole, as aforesaid, and that, by the bye-laws of said congregational society, the preaching of the gospel therein is to be supported by a tax on the grand list of its members.

The plaintiff offered in evidence, and read to the jury, the following written disclosure, having first proved the signing thereof, to wit :

" I, John Kellogg, of Benson, in the county of Rutland,
" and state of Vermont, agreeably to the statute in such case
" provided, disclose and say that, on the first day of April
" last, the amount of my money on hand, or money due, or
" obligations for money or cattle, or claims for cattle let, or
" any kind or species of property whatever, which was good
" and collectable, whether such obligations were then due,
" or payable at a then future day, was not over and above
" the debts then due from me.

" Dated at Benson this 29th day of July, A.D. 1836,
" JOHN KELLOGG."

The plaintiff then offered evidence tending to show that

on the 29th day of July, 1836, he applied to the defendants, as selectmen, who were then together at the store of the said Edward H. Aiken in said Benson, for the purpose of taking the oath provided for in the statute in the case of persons aggrieved by assessments for money on hand, &c., and that said Aiken then administered said oath to the plaintiff, and thereupon the plaintiff delivered said Aiken the written disclosure above recited, and said to the defendants, " that is my disclosure," and then said Aiken asked the plaintiff, if " Joseph Gibbs did not owe him," and " how much," and claimed the right to inquire of the plaintiff what particular persons owed him, and how much, and what particular persons he owed, and how much ; that the plaintiff then contended that he had done all he was bound to do, and declined to answer any questions in relation to any particular persons who owed him or any persons whom he owed, and claimed that he was under no obligation to answer any further questions, but he would answer any general questions in relation to his money on hand, debts due him, &c., and that, thereupon, the defendants then and ever after refused to certify the said written disclosure of the plaintiff and to return the same to the office of the town clerk of said Benson, or to deliver the same to the plaintiff to be so returned.

The defendants offered testimony tending to prove that a large sum of money was due to the plaintiff from Joseph Gibbs and Martin Root, which testimony was objected to by the plaintiff and rejected by the court.

The defendants further offered testimony tending to prove that the plaintiff said that in making his said pretended written disclosure, he did not take into consideration a contract between him and said Joseph Gibbs, and a contract between him and said Martin Root, which testimony was objected to by the plaintiff and rejected by the court.

The court decided that the selectmen were not authorized to examine and interrogate those who are assessed by the listers for money on hand, &c. and apply to them, and make their disclosure in writing ; and that the plaintiff was

not bound or required to answer any questions relating to the particular persons who owed him, or whom he owed, and that he was not bound to answer any questions relating to the situation of his money, &c. further than was contained in his disclosure before mentioned ; and that the defendants were liable in this action for the amount of taxes assessed to and paid by the plaintiff, as aforesaid, and interest thereon, provided the jury should find and believe the facts relied upon by the plaintiff as aforesaid, in support of the issue upon his part, and thereupon the defendants consented that a verdict should be taken against them with the right to except, &c., and the jury accordingly returned a verdict for the plaintiff for the sum of $100,44, damages and his costs.

The amount of the tax assessed to the plaintiff, as a member of the first congregational society in Benson as aforesaid, on the said $319,98 was $29,19, which sum, together with the sum of $1,75, as interest on the said tax from the time of the payment of the same to the collector of said society by the plaintiff, was included in the said verdict.

To which decisions of the court the defendants excepted.

*Briggs & June* and *Merrill & Ormsbee,* for defendants.

*P. Smith, J. Clark* and *J. Kellogg,* for plaintiff.

The opinion of the court was delivered by

BENNETT, J.—The decision of the questions, raised in this case, must depend upon what we consider to be the sound exposition of the 13th section of the act passed Nov. 17th, 1825, relating to the duties of listers. This section provides, that when any person thinks he is assessed by the listers in a greater sum than is just and reasonable, such person may apply to the selectmen, or a majority of them of the same town, and make disclosure on oath before such selectmen, any one of whom is empowered to administer the oath. It is then made the duty of the selectmen to certify the disclosure, and lodge it with the town clerk, and this shall be taken by the listers as the true sum in which the person shall be assessed. The result of this question must depend upon the *character* of the duty to be performed by the selectmen, whether they act in a judicial capacity, or barely ministerially. By the statute of 1809 it was made the duty of the person himself, to give in his list, the amount of money

which he had on hand, and obligations, &c., over and above the debts he owed, and, if he put in his list too small a sum, it was competent for the listers to increase the assessment in such sum as, in their opinion, would be equal to 6 per cent. on the amount such person had neglected to insert in his list. The second section of the act of 1809 further provided that if any person felt himself aggrieved by such assessment, he might have the same relief, and in the same manner as is allowed in other cases of assessment, under the eighth section of the act of 1797, to which the act of 1809 was in amendment. The eighth section of the act of 1797 provided, that if any person felt himself aggrieved, he might apply, in the first instance, to the listers for redress, and it was made their duty to grant such relief as they should judge just and reasonable ; and, in case they should neglect or refuse to grant such as was satisfactory, application might be made to a justice of the peace of the same town, who, with two or more of the selectmen of the town, should consider and determine the case as they should judge just. Under this statute, it is manifest that either board of relief acted in a judicial capacity.

By the 12th section of the act of 1825, 2 Vol. 75, it is made the duty of the listers to make a list of all property, by them appraised, or assessed at a certain rate per cent., with all other assessments by them made according to their discretion or judgment, including money on hand and debts due, &c. By this section the selectmen of the town are constituted a board of relief, except in the case of money on hand and debts due, and bank and insurance stock, and may reduce the assessment of the persons applying to them to such sum as will, in their opinion, be in due proportion to the assessment of other inhabitants of such town, as made by the listers, and the assessments, so corrected by the selectmen, or a majority of them, and by them certified and returned to the town clerk, shall be accepted by the listers and set in the list accordingly. It is also manifest that the duties of the selectmen, under this section, are of a judicial character. It is evident, that the legislature, by excepting the assessments for money on hand, debts due, and for bank and insurance stock from the operations of the 12th section of the act of 1825, and from the provisions of the 13th section itself, intended to put these on different ground, as it respects the mode of relief to

persons aggrieved, from what is provided in other cases.

By the 13th section, any person who thinks himself assessed by the listers for money on hand and debts due, or for bank or insurance stock, in a greater sum than is just and reasonable, may apply to the selectmen, or a majority of them, of the same town, and make disclosure on oath before such selectmen, any one of whom may administer the oath to such applicant. It is then made the duty of such selectmen to certify such disclosure and lodge it with the town clerk, and this disclosure shall be taken by the listers as the true sum in which such person shall be assessed. The form of the oath requires a true and faithful disclosure of all bank and insurance stock, all moneys on hand, and of debts and obligations whether due, or thereafter to grow due, *over* and *above* what was then due and owing from the person making such disclosure. It seems that in this case the plaintiff had been assessed by the listers of the town of Benson in the sum of $5,333, as for money on hand and debts due, which assessment had been returned and lodged with the town clerk, and that afterwards, feeling himself aggrieved, he applied to the selectmen, having made and subscribed a written disclosure, in which he states explicitly, that his money on hand and debts due him do not exceed the debts he owes ; and one of the selectmen administered to him the oath in due form of law. This is all the law requires. The selectmen were not to judge of the truth of the disclosure, and there is no reason why they should be permitted to institute an inquisition over the plaintiff and compel him to disclose all the particulars in relation to the situation of his money, what individuals may owe him, and to what amount, or to whom he may be indebted ; and, indeed, such a course would manifestly, and especially in a matter merely of revenue, be highly improper.

The disclosure of the party, feeling himself aggrieved, must be conclusive, and if it is wilfully false the remedy can only be by indictment.

The 13th section does not, in any way, constitute the selectmen a board of relief, and they are not vested with authority to judge as to the truth or sufficiency of the disclosure. In what point of view, then, can their duties be regarded, but as of a ministerial character ? The conscience of the party,

seeking relief from what he views an unjust assessment, is appealed to, and according to his disclosure he is to be assessed. The general disclosure, made by the plaintiff, is all that the nature of the case requires, is all the government ought to demand.

It is urged that if the duty to be performed by the selectmen is ministerial, there was no occasion that the disclosure should be made to the selectmen, or a major part of them; and that it would be sufficient if made to the selectman who administers the oath. This may be so, but it is a *non sequitur*, that the duty is judicial. It cannot change the character of an act which in the nature of things is purely ministerial. It is probable, that in this particular the same form of expression is retained inadvertently by the legislature, as is contained in the 12th section, where, most clearly, it was the intention of the legislature to give the selectmen judicial powers.

It follows, from this view of the subject, that the defendants are responsible to the plaintiff for such damages as he has sustained in consequence of their neglect to notify and deliver to the town clerk his disclosure, which he had subscribed in writing and sworn to in due form of law, and had delivered into their hands for that purpose. The judgment of the county court must, therefore, be affirmed.